FILED
2015 Dec-16  AM 10:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| TIMOTHY CURREN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 2:14-cv-2293-LSC |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF OPINION**

## I.      Introduction

The plaintiff, Timothy Curren, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for a Disability Insurance Benefits ("DIB"). Mr. Curren timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mr. Curren was forty-seven years old at the time of the Administrative Law Judge's ("ALJ's") decision. (Tr. at 129.) He graduated high school, and his past work experiences include employment as an x-ray technician, parts fabricator and molder, door installer, and inspector. (Tr. at 50, 52, 175-76, 182, 206.) Mr. Curren

claims that he became disabled on January 29, 2009, due to neck surgery and back problems. (Tr. at 175.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI.  *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA").  *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments.  *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled.  *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  The decision depends on the medical evidence contained in the record.  *See Hart v.*

*Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find him not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ found that Mr. Curren was insured through the date of her decision. (Tr. at 13.) She further determined that Mr. Curren had not engaged in SGA since the alleged onset of his disability. (*Id.*) According to the ALJ, Plaintiff's degenerative disc disease, hypertension, obesity, osteoarthritis, and herniated nucleus pulposus are considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, she found that these impairments did not meet, nor were medically equal to, any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) The ALJ found that Mr. Curren has the following RFC: sedentary work except he can carry 10 pounds occasionally and less than 10 pounds frequently, sit six hours in an eight-hour workday, and stand and walk two hours in an entire eight-hour day; he cannot climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs; he

can occasionally balance, stoop, crouch, knee and crawl; he cannot reach overhead; he should avoid all exposure to workplace hazards (e.g., dangerous machinery, unprotected heights); he should avoid concentrated exposure to temperature extremes, wetness, humidity and vibration; he should avoid prolonged or repetitive rotation, flexion and hyperextension of the neck; he can frequently finger and handle and occasionally push and/or pull; and he can maintain attention and concentration for two-hour periods at a time and perform simple, routine, and repetitive tasks. (*Id.* at 14.)

According to the ALJ, Mr. Curren is unable to perform any of his past relevant work, he is a "younger individual," and he has a high school education, as those terms are defined by the regulations. (*Id.* at 22.) She determined that "[t]ransferability of job skills is not [] material to the determination of disability." (*Id.*) Because Plaintiff cannot perform the full range of sedentary work, the ALJ enlisted a vocational expert ("VE") for finding that there are a significant number of jobs in the national economy that Mr. Curren is capable of performing, such as inspector, table worker, and information clerk. (*Id.*) The ALJ concluded her findings by stating that Plaintiff "has not been under a 'disability,' as defined in the Social Security Act, at any time from January 29, 2009, through the date of this decision." (*Id.* at 23.)

## II.    Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied.  *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)).  This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions.  *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)).  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"  *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this Court finds that the

proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)).   Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III.   Discussion

The single basis of Mr. Curren's request for judicial review of the Commissioner's denial of his application for DIB is grounded in his belief that "the ALJ did not properly assess . . . [his] credibility consistent with the regulations." (Doc. 17 at 5.)

Mr. Curren complained of chronic moderately severe neck and back pain. (Tr. at 38). He testified that he is in pain all of the time and is limited in what he can do. (Tr. at 34). According to Plaintiff, he has to lie down "a lot" because of his pain. (*Id.*) He explained that his pain continued after his surgeries and physical therapy and he then initiated pain management. (Tr. at 36). Plaintiff further

testified that he did not receive relief from a pain pump that was implanted. (Tr. at 37). Plaintiff rated his pain an 8 out of 10 before medication and a 6 to 7 with medication. (Tr. at 38). Plaintiff testified that standing, sitting, bending or lifting a milk jug worsens his pain. (Tr. at 40, 41).

The Social Security Act provides that "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability . . . ." *See* 42 U.S.C. § 423(d)(5)(A); *see also* 20 C.F.R. §§ 404.1529(a), 416.929(a) (same). "[T]here must be medical signs and findings . . . which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce pain and other symptoms alleged and which, when considered with all evidence required to be furnished . . . would lead to a conclusion that the individual is under a disability." 42 U.S.C. § 423(d)(5)(A); *see* 20 C.F.R. §§ 404.1529, 416.929. Accordingly, an ALJ is not required to merely accept a claimant's subjective allegations of pain or other symptoms and may properly consider the claimant's credibility when making a determination of disability. *See Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002).

When a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms, the ALJ applies what the Eleventh

Circuit calls the "pain standard." *See Dyer*, 395 F.3d at 1210 (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). The pain standard reflects the language of 20 C.F.R. §§ 404.1529 and 416.929. *See Wilson*, 284 F.3d at 1225-26. Although the ALJ is not required to recite the pain standard, the ALJ must make findings that indicate that the standard was applied. *See id*. at 1226-27. If, as in the instant case, a claimant establishes an impairment that could reasonably be expected to produce the alleged symptoms, the ALJ must evaluate the intensity and persistence of those symptoms and their effect on the claimant's ability to work. *See* 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1); *Wilson*, 284 F.3d at 1225-26. In addition to the objective medical evidence, the ALJ considers factors such as (i) treatment history, (ii) the type, dosage, effectiveness, and side effects of any medications taken, (iii) treatment taken other than medications, (iv) any other measures used for relief of pain or other symptoms, (v) any precipitating and aggravating factors, (vi) medical source opinions, (vii) statements by the claimant and others about pain and other symptoms, (viii), information about prior work, and (ix) evidence of daily activities. *See* 20 C.F.R. §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3). The ALJ also appropriately considers inconsistencies in the evidence, and the extent to which there are conflicts between the claimant's statements and the rest of the evidence, including the claimant's history, signs and

laboratory findings, and statements by treating and non-treating sources or by other persons about how the symptoms affect the claimant. *See* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). The regulations do not require, however, that the ALJ specifically discuss every section 404.1529/416.929 factor in evaluating a claimant's credibility. *See Dyer*, 395 F.3d at 1211 (concluding ALJ "adequately explained his reasons" for discrediting claimant's pain testimony where "ALJ considered [claimant's] activities of daily living, the frequency of his symptoms, and the types and dosages of his medications").

Thus, the ALJ is permitted to discredit the claimant's subjective testimony of pain and other symptoms if he articulates explicit and adequate reasons for doing so. *Wilson*, 284 F.3d at 1225; *see also* Social Security Ruling ("SSR") 96-7p, 1996 WL 374186 (1996) ("[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements."). Although the Eleventh Circuit does not require explicit findings as to credibility, "the implication must be obvious to the reviewing court." *Dyer*, 395 F.3d at 1210. "[P]articular phrases or formulations" do not have to be cited in an ALJ's credibility determination, but it cannot be a "broad rejection which is "not

enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole." *Id.* (internal quotations omitted).

In this case, the ALJ recited the applicable standards for assessing subjective complaints and found that Mr. Curren's statements concerning the "intensity, persistence, and limiting effects" of his symptoms were not "entirely credible." (Tr. at 16.) Specifically, the ALJ discredited Mr. Curren's subjective complaints of pain because they: (1) were not supported by the record of his treatment history, (2) were well-controlled by his medications, and (3) were not consistent with his reported daily activities. (Tr. at 15-16.) The Court is satisfied that the ALJ's reasons for discrediting Mr. Curren's subjective complaints of pain are explicit and that substantial evidence in the record exists to support the credibility determination.

The ALJ first discredited Mr. Curren's subjective complaints of pain because his complaints were not supported by the record of his treatment history. A review of Plaintiff's treatment history is warranted here. With regard to his treatment for his back and neck pain, the ALJ considered that on January 29, 2009, Plaintiff's alleged onset date, Plaintiff slipped at work, resulting in contusions to his head and elbow and a back sprain. (Tr. at 16, 384). His elbow was placed in a splint, and, a week later, he complained of only mild neck and back pain. (Tr. at 381, 383).

He had mild cervical tenderness and restricted range of motion in his right elbow, but otherwise a physical examination revealed no significant abnormalities. (Tr. at 381). On February 5, 2009, a CT scan of his cervical spine showed disc space narrowing at C5-C6 and C6-C7 and mild straightening of the cervical lordosis. (Tr. at 16, 381). X-rays of his lumbar spine showed osteoarthritis, disc degeneration, and cystic changes on the proximal right femur. (Tr. at 16, 381). On February 12, 2009, Plaintiff had good mobility in his right elbow with mild localized tenderness. (Tr. at 380). He had almost returned to his full range of motion and reported thoracic and lumbar pain without radiation; and his doctor returned him to full work duties. (Tr. at 380).

Subsequently, the ALJ noted that Plaintiff complained of worsening neck and back pain, and MRIs of his cervical spine showed posterior disc bulging at C5-C6, C6-C7, and C7-T1. (Tr. at 16, 399-400, 467, 470). Plaintiff had a discectomy and cervical fusion surgery in April 2009. (Tr. at 16, 387-89). After his surgery, Plaintiff had nerve blocks and reported a 90% reduction in his neck pain. (Tr. at 16, 423, 428, 453-54, 473). X-rays of his cervical spine from July 2009 showed surgical changes but no other significant findings. (Tr. at 19, 728). On physical examination in November 2009, he had increased range of motion in his cervical spine, and motor and sensory exams were within normal limits. (Tr. at 454). After Plaintiff

complained of severe neck pain in December 2009, and a CT scan of his cervical spine showed pseudoarthritis at the levels where he previously had undergone surgery, Dr. More, his neurosurgeon, opined that his body had rejected the compressed bone. (Tr. at 474-75).

The ALJ discussed that later that month Plaintiff had exploration of cervical fusion with removal of anterior cervical plate and placement of four screws. (Tr. at 16, 303-05). Post-surgery, x-rays of his cervical spine from March 2010 indicated moderate disc space narrowing at C6-C7 with spondylosis at C4-C5. (Tr. at 16, 394). An MRI of Plaintiff's lumbar spine from March 2010 showed only moderate degenerative disc disease at L3-L4 and mild disc desiccation at L4-L5 and L5-S1 with no evidence of herniation or stenosis. (Tr. at 16, 406-07). A CT scan in May 2010 of Plaintiff's lumbar spine showed mild degenerative changes at all levels. (Tr. at 439). At that time, Plaintiff told Dr. More that his neck still felt "a bit sore," he had some upper extremity weakness and numbness in his hands, but he was doing "very well" overall. (Tr. at 455). While he also reported worsening of his low back pain, on physical examination, Plaintiff was not tender to palpation; there was no paraspinal muscle spasms; he had no sensory deficits; he could heel and toe walk; his motor strength in his lower extremities was at least 4/5; and he had reduced range of motion in his lumbar spine. (Tr. at 16, 456). In June 2010, a trial

dorsal spinal cord stimulator was placed, and Plaintiff reported a 40% reduction in pain. (Tr. at 17, 460-61).

The ALJ also considered that Plaintiff saw Drs. Krauss and Doleys, pain management specialists, in March 2011. (Tr. at 17, 488, 508-14). Plaintiff reported to Dr. Doleys that he experienced primarily lower back pain aggravated by cold weather, coughing, sneezing, sitting for an hour, emotional upset, and "any and all activity." (Tr. at 17, 488, 489). However, on physical examination, he was not in acute pain, and, in fact, he rated his current pain as 0 out of 10; he had a normal gait; and he reported that his "functional level" of pain was 4-5 out of 10, although his pain in the past had ranged from 7-11 out of 10 [sic]. (Tr. at 17, 491). After Plaintiff was detoxed from opioids, Dr. Krauss placed an intrathecal catheter for pain control in June 2011. (Tr. at 17, 495, 501, 503, 520, 555-56). Plaintiff reported that his pain remained in the moderate range. (Tr. at 669, 672, 674.) The catheter was removed in July 2011. (Tr. at 574). Subsequently, Dr. Krauss restarted oral pain medications, and Plaintiff reported a reduction in his pain and significant improvement in his physical functioning. (Tr. at 19, 608, 612, 616, 622, 625, 628, 631, 637, 640, 643, 649, 654, 659). On physical examination in December 2011, he had moderate muscle spasms, full range of motion with only mild to moderate pain, straight leg raising tests elicited no pain, and his pain was moderate. (Tr. at 19, 654,

656). In November 2012, he had moderate muscle spasms, full range of motion with only mild to moderate pain, normal motor strength, and his pain was again moderate. (Tr. at 19, 619-20).

The ALJ also considered that treatment notes from Dr. Avasar, Plaintiff's primary care provider, showed that between April 2010 and May 2012, Plaintiff received periodic medication therapy for his neck and back pain. (Tr. at 19, 732-74). Dr. Avasar stated that a physical examination in October 2009 was within normal limits. (Tr. at 745). The ALJ observed that Plaintiff had only sought emergency care for his lower back pain once, in September 2012. (Tr. at 17, 719-26).

In addition, the ALJ considered the evidence from the consultative examiners. For instance, in September 2011, Dr. Elmore, a neurologist, found that Plaintiff did not require an assistive device to ambulate, he had normal motor strength, he could heel, toe, and tandem walk, his sensation was intact, and a straight leg raise test was negative. (Tr. at 580-81). Dr. Elmore concluded that the neurologic examination was essentially normal and that there was no evidence of radiculopathy and no residual neurologic or neuropsychiatric disability resulting from his accident. (Tr. at 17, 581-82). The ALJ also considered that Plaintiff was examined by Dr. Canario at the request of his worker's compensation insurance company. (Tr. at 18). On physical examination, Dr. Canario found negative

Spurling's test; normal reflexes, motor strength, and sensation; paravertebral tenderness; and reduced flexion of the lumbosacral spine, reduced lateral bending, and reduced rotation, but normal extension. (Tr. at 18, 602). Dr. Canario noted that MRIs showed degenerative changes in the cervical and lumbar spine but no herniated discs and estimated that Plaintiff had a 15% disability for his cervical spine and 2.5% disability for his back sprain and that he was capable of light work. (Tr. at 18, 603).

The ALJ also noted that in November 2012, Plaintiff was consultatively examined by Dr. Romeo. (Tr. at 18, 364-67). On physical examination, Dr. Romeo found that Plaintiff had a normal gait and did not require an assistive device to ambulate; he could stoop, crouch, kneel, tandem walk, and heel/toe walk without difficulty; he had mild hypertrophic deformity of the right knee but otherwise normal joints; there were no signs of synovitis, tenderness, or effusions in his joints; he had no spasms in his neck or back; he had no deformities of the back; he had normal motor strength, grip strength, manipulation, and sensation; a straight leg raise test was negative; his manual dexterity was good; Romberg sign was negative; he had decreased flexion in his knees and decreased range of motion of the cervical spine but normal range of motion in his arms, shoulders, lumbar spine, hips. (Tr. at 18-91, 365-69). X-rays showed status post anterior fusion of the

cervical spine with stable findings and well preserved disc space. (Tr. at 370). Dr. Romeo opined that Plaintiff could perform a range of light work. (Tr. at 19, 371-76).

The above review of the evidence considered by the ALJ illustrates the thorough review the ALJ engaged in to assess whether the medical records supported Mr. Curren's subjective complaints of pain. The Court is satisfied that substantial evidence supports the ALJ's decision because the records indicate that although Plaintiff certainly complained of and was treated for pain, it appears that the pain was well-maintained with treatment. For example, the ALJ specifically noted that although at the administrative hearing, Plaintiff testified that Dr. Avasar prescribed medication for his hypertension and Xanax for his depression (Tr. at 43); Plaintiff had not seen Dr. Avasar since May 2012, a year prior to the administrative hearing. (Tr. at 15, 771-72, 774). Moreover, although Plaintiff once took medication for high blood pressure, Plaintiff admitted that Dr. Krauss, his pain management specialist, had stopped prescribing blood pressure medication. (Tr. at 15, 45). Furthermore, the ALJ found that Plaintiff had not required emergency treatment for hypertensive or cardiac problems. (Tr. at 15, 43, 251-774). Additionally, although Plaintiff alleged disabling knee pain, he had not sought treatment in several years. (Tr. at 16.)

And yet, Mr. Curren believes the ALJ's decision was incorrect in discrediting his subjective complaints of pain because "the record is replete with the documentation of . . . [his] intractible [sic] pain." (*See* Doc. 17 at 6.) Mr. Curren calls the ALJ's determination a selective exercise in "choos[ing] citations" to support her determination. (Doc. 17 at 11.) However, the ALJ is not required to cite to each instance of documentation of pain or to formulate her decision in such a rigid manner that includes every conclusion from the full 774-page record. *See Mitchell*, 771 F.3d at 782 (pointing out that "particular phrases or formulations" do not have to be cited in an ALJ's credibility determination nor does she have to "refer to every piece of evidence in [her] decision") (quoting *Dyer*, 395 F.3d at 1211). Instead, she is only required to support her decision by substantial evidence, which she overwhelmingly did here when she thoroughly engaged the medical record in reaching her conclusions.

Aside from considering that the medical records did not reveal intractable pain of the nature described by the plaintiff, the ALJ also specifically determined that when Mr. Curren took medications, his pain was "relatively maintained." (Tr. at 15.) This reason is also supported by substantial evidence. Mr. Curren testified that without his medications his neck and back pain reached an 8 on a 10-point scale, which the ALJ denotes as severe pain, but that with his medications his pain

was a 6 to 7, which denoted only moderate pain. (*Id.*) Furthermore, the ALJ found that, despite alleging disabling knee pain, Plaintiff had not sought treatment for his knee in years and told Dr. Doleys it only occasionally hurt. (Tr. a5 15, 41, 488). Further, after Dr. Krauss restarted oral pain medications for Mr. Curren, he reported a reduction in his pain and significant improvement in his physical functioning. (Tr. at 19, 608, 612, 616, 622, 625, 628, 631, 637, 640, 643, 649, 654, 659.) When medication effectively controls medical conditions, it is more difficult for a plaintiff to show that those conditions are disabling for Social Security disability purposes. *See Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988).

Lastly, the ALJ supported her determination that Mr. Curren was not entirely credible by stating that "[his described daily activities] are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (Tr. at 15.) While "participation in everyday activities of short duration" does not disqualify Mr. Curren from disability, an ALJ can certainly consider them in making her determination. *See Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997); 20 C.F.R. § 404.1529(c)(3)(i); SSR 96-7p, 1996 WL 374186 at *3, 6, 7; *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987) ("The regulations do not [] prevent the ALJ from considering daily activities at the fourth step of the sequential evaluation process"). The ALJ considered Mr. Curren's reported daily

activities and reported that Mr. Curren "cares for his son, drives him to and from school, prepare[s] meals daily, does the laundry, shops for groceries, pays his bills and manages his finances." (Tr. at 15.) Not only did Mr. Curren engage in these activities, but in his examination with Dr. Neville, he described his "being independent . . . [in his] personal hygiene" and his ability to "cut the grass with a riding lawnmower, shop[], dr[i]ve, visit[] with friends, . . . [go] to the hunting club [because he] do[esn't] like to be still . . . [and go] to the bank for a family member." (Tr. at 358.) He also told Dr. Doleys that he hunts. (Tr. at 490.) In the ALJ's opinion, these activities did not seem consistent with Mr. Curren's complaints of disabling symptoms and limitations. The medical record confirms the ALJ's decision. Importantly, the ALJ did not rely on reported daily activities alone in making her credibility determination, and she did not find his reported daily activities to be dispositive, but merely one factor among several in her credibility determination.

Although Plaintiff argues that the record is replete with his history of complaints of severe neck and back pain, these are merely Plaintiff's own subjective reports of symptoms. Without corroborating evidence of disabling symptoms or evidence that undermines the ALJ's reasons for finding Plaintiff's allegations not entirely credible, Plaintiff cannot prevail under this Court's standard of review.

Notably, as discussed above, on physical examination, Plaintiff's examining physicians often found no muscle spasms (or no more than moderate spasms) in his neck and back, mild to moderate spinal tenderness, normal motor and sensory exams, and negative straight leg raising tests. (Tr. at 365-69, 381, 454, 456, 580-81, 619-20, 654, 656, 745.) Significantly, as discussed above, while Plaintiff's doctors treated him with medications, injections, and blocks, he reported up to 90% relief from these treatments. (Tr. at 423, 428, 453-54, 473). At times, he reported his pain as low as 0 out of 10, and treatment notes reflect his pain was frequently reported as mild, moderate, or as a 4, 5, or 6 out of 10. (Tr. at 380, 381, 455, 460-61, 491, 608, 612, 616, 619-20, 622, 628, 631, 637, 640, 643, 649, 654, 656, 669, 672, 674). Finally, Plaintiff only required emergency care once for his allegedly disabling symptoms. (Tr. at 719-26). Even if there is some evidence supporting Plaintiff's claims of neck and back pain, as discussed above, substantial evidence supports the ALJ's finding, and, therefore, this Court affirms it. *See Crawford*, 363 F.3d at 1158-59.

## IV.   Conclusion

Upon review of the administrative record, and considering all of Mr. Curren's arguments, the Court finds the ALJ's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** AND **ORDERED** ON DECEMBER 16, 2015.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

160704